William Budslow POTTER, Petitioner,

v.

UNITED STATES of America, Respondent.

Jack Richard COPE, Petitioner,

v.

UNITED STATES of America, Respondent.

Nos. 14174–1, 15252–1.

United States District Court
W. D. Missouri, W. D.

Feb. 4, 1965.

Neal E. Millert, Kansas City, Mo., for petitioner William Budslow Potter.

David R. Odegard, Kansas City, Mo., for petitioner Jack Richard Cope.

F. Russell Millin, U. S. Atty., William A. Kitchen, Asst. U. S. Atty., Kansas City, Mo., for respondent United States.

JOHN W. OLIVER, District Judge.

We have consolidated two pending applications for writs of error coram nobis separately filed by petitioners Potter and Cope, because both petitioners were sentenced at the same time and both applications raise essentially the same question of law. Petitioners question the validity of certain consecutively imposed sentences imposed on them by Judge Whittaker in cases transferred to this Court under Rule 20 of the Federal Rules of Criminal Procedure from other District Courts sitting in districts in which the offenses were committed.

On pleas of guilty, petitioner Potter on June 17, 1955, was sentenced to fourteen years on Count I and three years on Count V in Case No. 2240, a case originally filed in this district; five years in Case No. 19215, to run consecutively; five years in Case No. 19225 to run consecutively; and five years in Case No. 19218, also to run consecutively, all for a total sentence of thirty-two years.

Petitioner Cope, also on pleas of guilty, and also on June 17, 1955, was sentenced to twelve years on Count I and three

years on Count V in Case No. 2240; four years in No. 19209, to run consecutively; four years in Case No. 19225, to run consecutively; and four years in Case No. 19216, also to run consecutively, all for a total sentence of twenty-seven years.

All the cases other than No. 2240 were transferred to this Court under Rule 20; the sentences imposed in those transferred cases are the sentences with which we are presently concerned.

Neither petitioner is a stranger to the judges of this Court or to the Court of Appeals in regard to the sentences imposed on them by Judge Whittaker on June 17, 1955. The late Judge Smith denied petitioner Cope's first Section 2255 motion on October 8, 1956, reported as United States v. Cope, W.D. Mo., 1956, 144 F.Supp. 799. Judge Smith's denial of leave to appeal in forma pauperis was sustained by the Court of Appeals on December 3, 1956.

Judge Duncan's denial of petitioner Potter's first Section 2255 motion on December 4, 1961 was affirmed by the Court of Appeals on June 21, 1962, reported as Potter v. United States, 8 Cir. 1962, 304 F.2d 664.[1]

On October 31, 1962, in Case No. 14114 (unreported), we treated various letters written by petitioner Cope as a second Section 2255 motion and denied relief on the basis of the files and records in the case. Our order was not appealed.

An appeal from Judge Gibson's denial of still another Section 2255 motion filed by petitioner Cope was dismissed as frivolous by the Court of Appeals on January 21, 1963, reported as Cope v. United States, 8 Cir.1963, 312 F.2d 520.

Our denial of petitioner Potter's second Section 2255 motion was affirmed by the Court of Appeals on May 31, 1963, reported as Potter v. United States, 8 Cir.1963, 317 F.2d 661.[2] Our refusal to entertain an action for declaratory judgment and injunction against certain officials of the State of Missouri was affirmed by the Court of Appeals on December 27, 1963, reported as Potter v. State of Missouri, 8 Cir. 1963, 325 F.2d 525.

In our orders appointing Neal E. Millert, Esq. as counsel for petitioner Potter and David R. Odegard, Esq. as counsel for petitioner Cope, we stated our view of our coram nobis jurisdiction by saying that: "Our decision in Burns v. United States, W.D.Mo.1962, 210 F.Supp. 528, affirmed 321 F.2d 893, and the discussion both by this Court and by the Court of Appeals of United States v. Morgan, 346 U.S. 502 [74 S.Ct. 247, 98 L.Ed. 248] (1954), indicates that coram nobis may be presently available to petitioner to test the validity of the consecutive sentences."

Counsel for petitioners and the Government have indicated their agree-

1. Footnote 1 on page 665 of 304 F.2d of that opinion noted that the three 5 year consecutive sentences attacked by petitioner Potter in this coram nobis proceeding were not involved in that case.

2. It is interesting, or perhaps even ironic, to note that petitioner Potter's motion to vacate, filed December 12, 1962, was predicated on the theory that Judge Whittaker did not have power to impose consecutive sentences; and that, in any event, only one concurrent sentence should have been imposed for all four offenses because "each of the alleged crimes are merely overt acts of a single crime, since each one of the crimes that were committed by your movant was a

chain reaction or a single thought * * * each crime was planned at the same time, although they were [committed] several months apart."

As we shall point out later, petitioner Potter would have us now believe that he really did not know about the bank robberies in the districts other than the Western District of Missouri. The point now raised concerning the sentences imposed in the Rule 20 cases, of course, was not raised in petitioner Potter's December 12, 1962, motion. But it is clear that we must consider this belatedly raised question; see Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1964).

ment with that view. We therefore consider both cases on their merits. Generally speaking, the procedure and scope of our review is substantially the same as it would have been if the questions could have been presented by a Section 2255 motion. Our determination of these cases is made with that consideration in mind.

### Specific Findings of Fact in Regard to Petitioner Cope

The files and records of this Court case show that petitioner Cope first appeared before Judge Whittaker on April 1, 1955, in the Western Division for this Court in Kansas City, with his attorney, Phil Graves of Neosha, Missouri, venue in the Southwestern Division of this Court having been expressly waived. The charge pending by indictment had been returned March 5, 1955, and filed as Case No. 2240 in the Southwestern Division of this Court at Joplin, Missouri. The case was therefore ordered transferred to the Western Division of this Court, pursuant to Rule 19. The indictment, which also named petitioner Potter as a co-defendant, related to an alleged $50,838.00 armed robbery of the Cornerstone Bank at Southwest City, Missouri.

The proceedings in the Western Division of this Court show that reading of the indictment was waived; that petitioner Cope entered a plea of guilty to Counts I and V of the indictment in Case No. 2240; and that a pre-sentence examination was ordered.

The following announcement was made by the Assistant United States Attorney and the following action was taken:

"MR. WEST: Now, if the Court please, this is just as to Mr. Cope, but he has since this happened, this young man here after apprehension in this case has furnished information which is instrumental and in connection with which he has admitted participation in three other armed bank robberies.

"Now, as I understand it, he desires to waive indictment in those cases so that informations can be filed and those cases can be forwarded to this district for disposition under Rule 20. We have been advised that at least one district, we have a communication from Indiana that they are willing that be done. Of course in these three armed bank robberies, there is no question about Federal charges will be charged in this district. They are going to be filed and since they are, it is my understanding here at this time in open court he desires to waive—of course he is merely waiving indictment at this time as to those cases so we can endeavor to have them transferred, and at that time he will—

"THE COURT: Have I power to make an order of that character?

"MR. WEST: The only thing we can do here is in open court have these waivers of indictment in these cases executed. That is all I am asking to be done, and I will forward these to the proper district and ask them to file proper charges and ask them if they consider forwarding them here under Rule 20.

"THE COURT: Do you agree to this?

"MR. GRAVES: Yes, sir.

"THE COURT: And you think that is what you would like?

"MR. GRAVES: Yes, sir.

"MR. WEST: If the Court please, the Defendant Cope has with his attorney executed requests [sic] in these three different cases, one in connection with the robbery of the Capitol Savings and Loan Association, Chicago, Illinois, on or about January 7, 1955, one in connection with the robbery of Kouts State Bank, Kouts, Indiana, on or about December 3, 1954, and one in connection with the robbery of the

Columbia Federal Savings and Loan Association, St. Louis, Missouri, on or about October 8, 1954. I will immediately forward these out and see if I can get them here.

"THE COURT: All right." (pages 5–6 of Transcript of April 1, 1955).

The files and records show that one of petitioner Cope's waivers of indictment, executed in this Court on April 1, 1955, was filed on April 5, 1955, in the Eastern District of Missouri, the district of one of the other alleged offenses.[3] An information was also filed that day (April 5, 1955) in the Eastern District of Mis-

souri as Case No. 28193 in that court. Petitioner Cope's Rule 20 consent to transfer that case to this Court was filed in the Eastern District of Missouri on May 11, 1955, and the entire file was accordingly transferred to this Court on that day.[4]

After its transfer to this Court under Rule 20, that case became Case No. 19209 in this Court.

What became Case No. 19216 in this Court was transferred in similar manner from the United States District Court of the Northern District of Indiana. The waiver of indictment was executed in this Court on April 1, 1955; that waiver

---

3. The Waiver of Indictment in all the cases involving both petitioners was on the usual Criminal Form 18. The particular waiver in what became Case No. 19209 in this Court stated that: "Jack Richard Cope, the above named defendant, who is accused of violating Section 2113, Title 18, United States Code, in connection with the robbery of the Columbia Savings and Loan Association, St. Louis, Missouri, on or about October 8, 1954, being advised of the nature of the charge and of his rights, hereby waives in open court prosecution by indictment and consents that the proceeding may be by information instead of indictment." That waiver, as noted above, was executed in open court by petitioner Cope and his counsel on April 1, 1955.

It should be further noted that Mr. West's language that "Defendant Cope has with his attorney executed *requests* in these three different cases * * *" is inadvertent. The files and records are clear that the only documents executed by petitioner Cope on April 1, 1955, were the waivers of indictment. The Rule 20 Consents and requests to transfer were not executed until a later time, all of which will be stated later in detail. It is sufficient to note at this point that the District Attorney's files show that the Rule 20 consents were not even forwarded petitioner Cope's counsel until April 7, 1955, and that the Rule 20 consents were not forwarded to petitioner Potter's counsel until May 13, 1955.

It is obvious from correspondence in the District Attorney's office and from

the files and records of this Court that neither petitioner signed their respective Rule 20 consents in open court. Nor was it necessary for either to have done so. Nanney v. United States, 10 Cir. 1962, 301 F.2d 57, 58, is the most recent case that holds that "it is not essential to the validity of a consent to transfer under Rule 20 that it be signed in open court."

4. The Rule 20 Consents and requests to transfer in all the cases involving both petitioners were also in the usual form. Petitioner Cope's Rule 20 Consent and Request in what became No. 19209 in this Court stated that: "Jack Richard Cope hereby acknowledges receipt of a copy of the information pending against him in the above entitled cause [No. 28193 in the United States District Court for the Eastern District of Missouri] to waive trial thereunder in the Eastern District of Missouri, and to consent to disposition of the case in the Western District of Missouri, where defendant was arrested; all in accordance with Rule 20 of the Rules of Criminal Procedure for the District Courts of the United States."

The files and records show that this Rule 20 consent, as were all the Rule 20 consents involved in all the transferred cases here involved, was signed by petitioner Cope and his counsel (or petitioner Potter and his counsel) and that the approval of the United States Attorneys for both districts was endorsed thereon before it was filed in the Eastern District of Missouri.

and an information relating to a December 3, 1954 robbery of Kouts State Bank in Kouts, Indiana, was filed in the Northern District of Indiana on April 5, 1955; the Rule 20 consent, executed May 10, 1955, was fowarded to and filed in the Northern District of Indiana on May 18, 1955, and that Court's Case No. 2589 was accordingly transferred to this Court on May 21, 1955, where it became Case No. 19216 in this Court.

What became Case No. 19225 in this Court was transferred in similar fashion from the Northern District of Illinois. Indictment was waived in this Court on April 1, 1955. That waiver was forwarded to the Northern District of Illinois, after which the information charging a January 7, 1955 robbery of the Capitol Savings and Loan Association of Chicago, Illinois, was filed as No. 55 CR 254 in that Court. After the Rule 20 consent was forwarded and filed in the Northern District of Illinois, the entire case was transferred to this Court on May 26, 1955, where, after it was filed May 31, 1955, it became Case No. 19225 in this Court.

On June 17, 1955, the day sentences were imposed on petitioner Cope, the following is reflected on pages 3 and 4 of the transcript of that date in regard to Case No. 19209 in this Court, which, before its Rule 20 transfer, had been No. 28193 in the Eastern District of Missouri:

"MR. WEST: You will recall, Your Honor, the defendant waived indictment in open court and on the basis of that, * * * an information, charging the robbery of the Columbia Loan and Savings Association on October 8, 1954. That matter has been transferred here and is here now under Rule 20. What is the plea to the information that has been filed in this case?

"MR. COPE: Yes, guilty.

"THE COURT: Defendant appears in person and by counsel.

* * * and enters a plea of guilty to the information."

Pages 5 and 6 of the transcript of proceedings held June 17, 1955 reflect the following in regard to Case No. 19216 in this Court, which, before its Rule 20 transfer, had been No. 2589 in the Northern District of Indiana:

"MR. WEST: The next case is * * * 19216 we will take, if it is all right, first.

"THE COURT: All right.

"MR. WEST: That is a case against Jack Richard Cope, which has been transferred here under Rule 20 from the Northern District of Indiana, the Hammond Division, in connection with the robbery of the Kouts State Bank at Kouts, Indiana, on December 3, 1954. This likewise has been drawn in two counts. The first—it is similar to the one we just had—it is relative to armed robbery—the first count charges the robbery generally, and the second count charges the use of a dangerous weapon. Will you waive the reading, Mr. Cope, of the information that has been filed on the basis of your request?

"DEFENDANT COPE: Yes, sir.

"MR. WEST: You concur, Mr. Graves?

"MR. GRAVES: Yes.

"THE COURT: All right. Now, the defendant appears in person and by counsel and waives formal reading of the information and defendant enters a plea of—?

"MR. WEST: As to Count One, what is the plea, Mr. Cope?

"DEFENDANT COPE: Guilty.

"MR. WEST: And as to Count Two?

"DEFENDANT COPE: Guilty.

"THE COURT: Guilty to both Counts One and Two of the information."

Pages 4 and 5 of the transcript of proceedings held June 17, 1955 reflects the following in regard to Case No. 19225 in this Court, which, before its Rule 20 transfer, had been No. 55 CR 254 in the Northern District of Illinois:

"MR. WEST: The next case, Your Honor, would be 19225, which is on two defendants, William B. Potter and Jack R. Cope. This case is relative to the robbery of the Capitol Savings and Loan Association in Chicago, Illinois on January 7, 1955, and this information is in two counts. Both of these defendants have previously, here in open court, waived indictment on this and an information was, therefore, filed in the Northern District of Illinois. I believe that both of these defendants have seen copies of the information and have them. Do these defendants waive formal reading of the information?

"MR. GRAVES: Formal reading is waived

"MR. WEST: As to Cope and as to Potter.

"Now, this charge, Your Honor, is drawn in two counts. It is relative to the armed robbery, as I said, of the Capitol Savings and Loan Association in Chicago on January 7, 1955. The first count, both counts are drawn under Section 2113, Title 18. The first merely alleges the robbery, and the second count alleges that a firearm, a dangerous device, was used, which, of course, is tying in, has tied Sections A and D, Section 2113, but both counts together encompass the manner of the armed robbery of the bank. I will point that out.

"THE COURT. Yes.

"MR. WEST: It is one charge but they have drawn it in two counts.

"THE COURT: Yes.

"MR. WEST: And what is your plea, Mr. Cope?

"DEFENDANT COPE: Guilty.

"THE COURT: Defendant Jack R. Cope enters a plea of guilty."

When Judge Whittaker granted allocution to petitioner Cope, his counsel spoke on his behalf. Counsel concluded his statement by referring to petitioner Cope's desire "to clean up his whole slate." The following portion of the transcript from pages 9 and 10 reflect what occurred:

"MR. GRAVES: * * * I will say this to the Court, that when Jack Cope employed me he told me about these other robberies. * * * I recommended to him, and he accepted my recommendation, that he tell the Government everything he had been involved in and clean up the slate. * * * upon my advice and upon Jack Cope's expressed desire that he wanted to clean up his whole slate, he gave the Government additional information. I think Mr. West will bear me out, those other counts and other charges were filed merely because he was—

"MR. WEST: There were some other things, but I will say that he was cooperative. There was other information but he was completely cooperative. * * *

"MR. GRAVES: That concludes what I have to say.

"THE COURT: Now, does the defendant Cope have anything which he would like to say in his own behalf before sentence is imposed?

"DEFENDANT COPE: No, sir."

Sentence in all four cases was then imposed on petitioner Cope.

### Specific Findings of Fact in Regard to Petitioner Potter

The files and records of this Court show that petitioner Potter first appeared before Judge Whittaker on May 6, 1955. When Case No. 2240, originally

filed in this Court, was called, the following proceedings took place:

"MR. WEST: If the Court please, I am in receipt of a letter from this defendant's attorney, Mr. Yocom. I have also talked to him on the telephone. Mr. Yocom could not be here this morning. However, I understand that this defendant, and also Margaret Potter, who are the two remaining defendants in this case, are ready to plead guilty. The only reason for bringing him into court this morning is at Mr. Yocom's request. He desires to waive indictment. It is my understanding that Mr. Yocom fully discussed it with this defendant with reference to cases in the three outlying districts: —one, in connection with robbing the Safety Savings & Loan Association of Chicago, Illinois on or about January 7, 1955; the second is in connection with the Kouts State Bank at Kouts, Indiana on or about December 3, 1954; and the third of these is in connection with the robbery of the Columbia Federal Savings and Loan Association, St. Louis, Missouri, on or about October 8, 1954.

"Now, since Mr. Yocom isn't here and this is a bank robbery case, I don't desire to request that he be arraigned on the indictment or to do anything until counsel is here, except that I understand he desires to waive indictment on these three cases and, of course, he can do that this morning in open court no doubt. Waiving indictment, that permits them to file an information in the other Districts, which they can send in here, and that does not plead him Guilty or Not Guilty, and I understand he wants to do that and then there can be some disposition of these other matters. You understand that?

"MR. POTTER: Yes.

"MR. WEST: You have been over that with Mr. Yocom?

"MR. POTTER: Yes, sir." (Page 2–3 of May 6, 1955 transcript.)

Judge Whittaker made the following additional explanation to petitioner Potter at that time:

"THE COURT: What this does, Mr. Potter, is simply to waive presentment of these three other charges to a Grand Jury, and you waive indictment by a Grand Jury, and consent to being prosecuted by information. Has that been explained to you by your counsel, Mr. Yocum?

"MR. POTTER: Yes, sir.

"THE COURT: Do you desire then to waive indictment by a Grand Jury in those three cases referred to by the District Attorney?

"MR. POTTER: I do.

"THE COURT: And consent to prosecution by information?

"MR. POTTER: Yes, sir.

"THE COURT: All right." (page 3–4 of May 6, 1955, transcript.)

The Assistant United States Attorney then added the following:

"MR. WEST: William B. Potter, sir.

"Mr. Potter, and if the Court please, I will send these [the executed waivers of indictment] out immediately and as soon as I determine whether these Districts will send their files in—I anticipate they will from previous correspondence in connection with this Complaint—I think they will send them in here for whatever disposition this Court wants to make of them when those files arrive."

\*     \*     \*     \*     \*     \*

"MR. WEST: That is in anticipation of pleas of guilty, and furthermore, of course, it is usual that there

will be some delay in getting all of these cases in.

"It is Mr. Yocom's understanding—and I have discussed it with the other lawyers—when these cases get in, at that time Mr. Yocom will appear, and as I understand, they are going to plead guilty, and Margaret and this defendant will enter their pleas, and at that time we will be able to dispose of all five defendants, and all these other bank cases being transferred here, at the same time, all at one time. You understand that?

"MR. POTTER: Yes, sir." (Pages 4 and 5 of May 6, 1955 transcript).

■ We find and determine that no substantive or procedural right affecting the validity of the waivers of indictment made on May 6, 1955 was denied petitioner Potter on May 6, 1955 under Rule 44 of the Rules of Criminal Procedure or otherwise. We find that although petitioner Potter did appear in court without counsel, we also find that he was in fact represented by counsel, namely, Robert E. Yocom, Esq. of the Bar of Springfield, Missouri; that petitioner Potter was brought before Judge Whittaker without his counsel at his own request and at the request of his counsel; that there therefore was no occasion for Judge Whittaker to advise petitioner Potter of his right to counsel because petitioner Potter did in fact have counsel; that petitioner Potter advised Judge Whittaker that he had been advised by his counsel concerning the matters to be handled in his counsel's absence; and that therefore it must be found and determined that petitioner Potter elected to proceed without the physical presence of his counsel on May 6, 1955 (see and compare Turner v. United States, 8 Cir. 1964, 325 F.2d 988, 989, cert. denied 377 U.S. 946, 84 S.Ct. 1354, 12 L.Ed.2d 308, holding that waiver of indictment is a matter of "reality and not of ritual;" and compare also Cope v. United States,

8 Cir. 1963, 312 F.2d 520, 521, holding that the consent of a defendant may be "made manifest * * * through willing participation in what is being done.")

The files and records of this Court show that what became Case No. 19215 in this Court involved the October 8, 1954 robbery of the Columbia Federal Savings & Loan Association, St. Louis, Missouri, originated as Case No. 28225 in the Eastern District of Missouri, the district of the offense, and was transferred as such to this Court.

Case No. 19225, in this Court, involving the January 7, 1955 robbery of the Capitol Savings & Loan Association in Chicago, in which petitioner Potter was a co-defendant of petitioner Cope, originated as Case No. 55 CR 254 in the Northern District of Illinois, the district of the offense, and was, as we have stated in connection with petitioner Cope, transferred as such to this Court.

Case No. 19218 in this Court, involving petitioner Potter's involvement in the December 3, 1954 Kouts State Bank robbery in Kouts, Indiana, originated as Case No. 2602 in the Northern District of Indiana, the district of the offense, and was transferred as such to this Court. The exact dates of the filings are set forth in a stipulation filed by the parties and the ultimate sequence of those filings will be stated later for both petitioners.

Petitioner Potter was sentenced on June 17, 1955, the same day petitioner Cope and others were sentenced. In regard to Case No. 19215, transferred to this Court under Rule 20 from the Eastern District of Missouri, the following appears on pages 12 and 13 of the transcript of proceedings on June 17, 1955:

"MR. WEST: * * * Now, we have 19215, a companion case, 19215, relative to William Budslow Potter. That is also the robbery of the Columbia Federal Savings and Loan under Rule 20 from St. Louis. This is a companion case. It charges

William Budslow Potter with robbery of the Columbia Federal Savings and Loan Association on October 8, 1954. This defendant likewise requested an indictment (Information) be filed by coming in open court and waiving indictment. Information has been filed in St. Louis. I believe he has seen a copy of that, hasn't he?

"MR. YOCOM: Yes.

"MR. WEST: Will you waive the formal reading of that information?

"MR. YOCOM: We waive the formal reading of the information.

"MR. WEST: It charges him in one Count, also, Your Honor, with robbery of the Columbia Federal Savings & Loan Association in St. Louis, Missouri, on October 8, 1954.

"THE COURT: All right. How does the defendant, William B. Potter, plead to the information in that case?

"MR. YOCOM: Guilty, Your Honor.

"MR. WEST: Is that your plea, Mr. Potter?

"MR. POTTER: Yes.

"THE COURT: The defendant, William B. Potter, enters a plea of guilty as charged."

In regard to Case No. 19225, transferred to this Court under Rule 20 from the Northern District of Illinois, the following appears on pages 13 to 15 of the June 17, 1955 transcript as it relates to petitioner Potter:

"MR. WEST: The next case, Your Honor, would be 19225, which is on two defendants, William B. Potter and Jack R. Cope. This case is relative to the robbery of the Capitol Savings and Loan Association in Chicago, Illinois, on January 7, 1955; and this information is in two counts. Both of these defendants have previously, here in open court, waived indictment on

this and an information was, therefore, filed in the Northern District of Illinois. I believe that both of these defendants have seen copies of the information and have them. Do these defendants waive the formal reading of the information?

"MR. GRAVES: Formal reading is waived.

"MR. YOCOM: Waive formal reading.

"MR. WEST: As to Cope and as to Potter.

"Now, this charge, Your Honor, is drawn in two counts. It is relative to the armed robbery, as I said, of the Capitol Savings and Loan Association in Chicago on January 7, 1955. The first Count—both Counts are drawn under Section 2113, Title 18. The first merely alleges the robbery, and the second Count alleges that a firearm, a dangerous device, was used, which of course is tying in, has tied in, Sections A and D, Section 2113, but both Counts together encompass the manner of the armed robbery of the bank. I will point that out.

"THE COURT: Yes.

"MR. WEST: It is one charge but they have drawn it in two Counts.

"THE COURT: Yes.

"MR. WEST: Mr. William B. Potter, what is your plea to this cause?

"MR. YOCOM: Guilty.

"THE COURT: Defendant William B. Potter enters a plea of guilty."

In regard to Case No. 19218, transferred to this Court under Rule 20 from the Northern District of Indiana, the following appears on pages 16 and 17 of the June 17, 1955 transcript:

"MR. WEST: Now, as to Mr. William Potter in 19218, which is a companion case—

"THE COURT: Just a minute, 19218?

"MR. WEST: Yes. It pertains to robbery of the Kouts State Bank, Kouts, Indiana, on December 3, 1954. You have previously waived indictment in that and an information has been filed, which has been transferred here from the Northern District of Indiana, Hammond Division, under Rule 20. Do you waive reading of that information?

"MR. YOCOM: Yes.

"MR. WEST: This is an identical information to the one in 19216. It charges Mr. Potter with robbery of the Kouts State Bank, in two Counts, on December 3, 1954. The first Count charges the robbery itself. The second Count charges he used a dangerous device, a dangerous weapon, to put in jeopardy the lives of the employees of the bank. What is the plea as to Count One on that?

"MR. YOCOM: Guilty.

"MR. WEST: Is that correct, Mr. Potter?

"DEFENDANT POTTER: Yes.

"THE COURT: You have waived formal reading of the information in this 19218, have you?

"MR. YOCOM: Yes, Your Honor.

"THE COURT: And defendant William B. Potter appears in person and by counsel and enters a plea of—?

"MR. WEST: Guilty as to Count One.

"THE COURT: Guilty.

"MR. WEST: What is the plea as to Count Two?

"MR. YOCOM: Guilty as to Count Two.

"MR. WEST: Is that correct, Mr. Potter?

"DEFENDANT POTTER: Yes.

"THE COURT: As to both Counts One and Two of the information."

The United States Attorney in his statement to the Court again called attention to the fact that petitioners Potter and Cope were to be sentenced that day for four bank robberies. He said:

"MR. WEST: If the Court please, you have a very complete pre-sentence report. All defendants, of course, were involved in the robbery of the Cornerstone Bank at Southwest City, Missouri, which occurred this year, in which some $50,000.00, $50,338.00, was taken. In the bank robbery, as you know, of the Columbia Savings and Loan Association in St. Louis some $3,020.65 was taken. In the robbery of the Capitol Savings and Loan Association in Chicago, on January 7, 1955, $2,602.00, was taken, and the robbery of the Kouts State Bank, Kouts, Indiana, on December 3, 1954, the amount of $4,191.00 was taken.

" * * * Cope and William B. Potter are here, of course, in connection with four armed bank robberies."

The above statement was made immediately before Judge Whittaker granted allocution. After allocution, Judge Whittaker imposed sentence in all pending cases.

*Ultimate Factual Findings in Regard to Both Petitioners*

In the cases of both petitioner Potter and petitioner Cope, the files and records of this Court show that (1) valid waivers of indictment were made in this district, the district of arrest, by both petitioners in connection with offenses allegedly committed in other districts *before* any indictment or information was on file in the respective districts of offense; (2) the waivers of indictment executed in this district, the district of arrest, were immediately forwarded to and filed in the respective districts of the particular

alleged offenses; (3) *after* the waivers of indictment had been filed in the respective districts of a particular offense, informations were *thereafter* filed in the respective districts of a particular alleged offense and those informations were then forwarded to the United States Attorney in this district; (4) a copy of each particular information which theretofore had been filed in the particular district of a particular alleged offense was then given petitioners and their respective counsel, acknowledgment of receipt of a copy of each particular information was made by the signing and delivery by each petitioner and his counsel of separate Rule 20 consents and requests to transfer to the District Attorney for this district; (5) the District Attorney for this district, after endorsing his approval on a particular requested Rule 20 transfer, then forwarded each particular approved Rule 20 consent and request to transfer to the District Attorney for the particular district of a particular offense, who, after endorsing his required approval, filed each separate Rule 20 consent and request to transfer in the district of the particular offense and in which informations were then pending; (6) thereafter, all of the particular cases in which sentences were imposed were transferred to this Court from the respective district courts in which the various informations had been filed immediately after the waivers of indictment had been received and before the consents to transfer had been executed.

We also find from the files and records that both petitioners Cope and Potter were adequately advised of the nature of the charges that could have been brought against them in each of the districts in which the offenses were allegedly committed; that at the time indictments were waived both understood that no charges had yet been filed in the districts where the other offenses were allegedly committed; that both were advised and knew that such charges could be filed only by indictment unless voluntary waiver was made of such right; that the respective waivers of indictment were in fact voluntarily made, (there being no allegation or indication in the record to the contrary);[5] that the informations filed in the particular districts where the other offenses allegedly occurred were in fact the charges each petitioner was advised and knew would be made; and that the provisions of Rule 20 were invoked with the express consent and at the express request of both petitioner Cope and petitioner Potter, which consent and requests were knowingly, willingly, and voluntarily given with the advice and approval of competent counsel (there being no allegation or indication of record to the contrary);[5]

### Conclusions of Law

■■ The precise question presented by the briefs is whether the sentences imposed by Judge Whittaker in the cases transferred under Rule 20 are null and void.[6] The decision of our controlling court in Boyes v. United States, 8 Cir. 1962, 298 F.2d 828, cert. denied 370 U.S. 948, 82 S.Ct. 1595, 8 L.Ed.2d 814, requires that we hold that the sentences here involved are not null and void.

In Boyes, the prisoner made a post-conviction attack on a sentence imposed in a case after a Rule 20 transfer involving the following factual situation. A complaint was filed in the Eastern Dis-

5. The question of whether there may be possible fact issues still lurking in these cases will be noticed later and appropriate provision will be made in our order directing further proceedings.

6. Petitioners also argued that Rule 20 is unconstitutional, relying principally on Judge James Alger Fee's opinion in

United States v. Bink, D.C.Ore.1947, 74 F.Supp. 603. The express rejection of Bink by our Court of Appeals in Levine v. United States, 8 Cir. 1950, 182 F.2d 556 at 558, is controlling on that branch of these cases. Discussion of petitioners' constitutional argument would therefore be redundant.

trict of Missouri charging Boyes with robbing the Bank of O'Fallon, Missouri, an offense allegedly committed in that district. Boyes was arrested in the Western District of Texas and, like both petitioners here involved, executed a waiver of indictment in the district court of the district of his arrest.

As stated by the Court of Appeals in its opinion in Boyes, "[a]n information making charges of the violations recited in the complaint was thereupon filed against him in the Eastern District of Missouri;" "he [the defendant] executed a statement and request under Rule 20, Rules of Criminal Procedure, 18 U.S.C.A. to have the case transferred from the Eastern District of Missouri to the Western District of Texas to enable him to make a plea of guilty to the information in that district;" and "[t]ransfer of the case was accordingly made, and he was convicted and sentenced on this basis" (page 829 of 298 F.2d).

Boyes contended, as do petitioners in this case, that "his waiver of indictment, his request for a transfer under Rule 20, and his conviction and sentence in the Western District of Texas [the district of his arrest, rather than the district of the offense] had all been a legal nullity" (page 829 of 298 F.2d).

After noting on page 830 of 298 F.2d that "[a]ppellant's * * * contention is that his waiver of prosecution by indictment was a nullity, because it was made by him in the Western District of Texas and not in the Eastern District of Missouri where the offense was committed," the Court of Appeals held:

"The right under the Fifth Amendment to be prosecuted for a felony by indictment is itself a matter of substantive due process, but the manner of waiving that right and of consenting to be prosecuted instead by information is a matter of procedural due process. Since only procedural due process is involved, there is no constitutional barrier to such a waiver being authorized legislatively to be made in a district other than the one in which the crime was committed, such as Rule 7(b) of the Rules of Criminal Procedure has always been regarded as providing."

The Court of Appeals pointed out that Rule 7(b) requires that waiver of indictment must be made in open court and that a particular defendant must be advised of the nature of the charge and of his rights before a waiver is to be accepted; requirements we have found were met in regard to both petitioners here involved in connection with their respective waivers of indictment.

Applying the rationale that the manner of waiving indictment is a matter of "procedural due process," the Court of Appeals held that:

"[T]hese procedural prescriptions are as judicially capable of being safeguarded by the court of a district in which a defendant has been arrested and where he is present in open court for the purpose of waiving or having established against him probable cause for removal, as by the court of the district in which the offense has been committed."

The Court of Appeals was of the further opinion that:

"If this were not so, the result would be, in a situation such as is here involved, to deprive a defendant of, or to delay, his right to have the benefit of a transfer, such as Rule 20 contemplates."

Boyes v. United States, supra, and its rationale requires that we reject petitioners' basic contention and that the relief prayed for must be denied.

Two additional matters, however, require some comment. The first matter relates to the recently established policy of this Court in regard to Rule 20 transfers.

*The Decision of This Case Does Not
Affect the Recently Established
Rule 20 Policy of This Court*

The circulation last summer of the Second Preliminary Draft of the Proposed Amendments to the Rules of Criminal Procedure focused the attention of this Court on various practical problems presented by Rule 20, its proposed amendment, and the Rule 20 procedures to be followed in this district.

In July of 1964 all possible Rule 20 procedures were fully discussed by the Court en Banc with the United States District Attorney. On July 23, 1964, in a memorandum to the District Attorney, speaking for Division 1 of this Court, but with copies to my brother judges, we attempted to correct what we believe were erroneous impressions evidenced by an Assistant Attorney General of the United States who stated in correspondence to our District Attorney that he had been advised that "the judges in the Western District of Missouri have recently taken the position that they will accept no further cases under Rule 20 unless the defendant has been indicted in the district of the offense." We stated our understanding of the Rule 20 policy established by the Court en Banc. None of my brother judges have indicated any disagreement with what was stated in that memorandum.

We there stated that the procedure approved in United States v. East, D.C., 5 F.R.D. 389, would be followed, but we also noted that the rationale of that case required the validation of an information filed in the district of the offense *before* waiver of indictment would be taken under Rule 7 in this Court. We now add that our adoption of that policy was based in part upon procedures consistently recommended by the Criminal Division of the Department of Justice and to avoid the sort of post-conviction problems presented by the type of case now under review.

In a bulletin dated July 9, 1951, the Criminal Division directed a discontinua-tion of a form that some District Attorneys were then using that attempted to combine into one procedural step a waiver of indictment with a Rule 20 consent and request to transfer.

██ That recommendation to discontinue the use of such a form was, of course, based on a recognition that Rule 20, in its present form, only authorizes the transfer and disposition of a case in which an "indictment or information is pending." A request for a Rule 20 transfer made *before* either an indictment or an information is filed in the district of the offense simply is not within the scope of the language of present Rule 20.

That 1951 bulletin of the Criminal Division directed "uniform compliance with the requirement under Rule 20 that the information be filed *prior* to the written consent to transfer * * * although delay in completing the transfer process may necessarily result." Another portion of that bulletin reiterated that "care must be taken to make sure that the information is on file in the district of the offense *before* the defendant in the district of his arrest is permitted to sign a formal written consent to the desired transfer."

Pages 16 and 16.1 of the present Manual for District Attorneys contains a discussion of the utilization of Rule 7(b) and Rule 20 together. Those regulations, promulgated April 1, 1955, note that while "waiver of indictment * * * may be made in the district of the arrest (United States v. East, 5 F.R.D. 389)," that nevertheless, a literal reading of Rule 20 contemplates that an information be on file in the district of the offense "before defendant is permitted to sign a formal written consent to transfer to the district of the arrest."

The present Manual also points out that "nothing in either Rule 7(b) or Rule 20 requires that the waiver of indictment, if made in the district of arrest, be *forwarded* to the district of the offense *before* the information is filed in that dis-

trict;" meaning, of course, that the present regulations recognize that neither rule prohibits the filing of a proposed information in the district of the offense *before* a waiver of indictment is processed in the district of the arrest, a procedural step this Court believes should be taken in order that the proposed information filed in the district of the offense be available for use in the waiver of indictment proceeding processed in the district of the arrest, all for reasons we shall presently state.

So far as the cases under consideration are concerned, it is apparent that the procedures recommended by the Department of Justice were followed. The fact that the informations were not on file at the time of the waivers of indictment was held to be not fatal in the Boyes case in light of the fact that the information was in fact on file when the Rule 20 consents were made. Such are the facts in these cases; Boyes therefore controls.

Quite apart from our decision in these cases, we were and still are convinced that procedures generally followed under Rule 20 in its unamended form may be further improved in cases where indictments are not pending in the district of the offense in order to eliminate the sort of post-conviction litigation illustrated by the cases under consideration. Our policy determination in Rule 20 cases, in substance, incorporates the procedural protections recommended by proposed subparagraph (b) of the proposed amendments to Rule 20.

Assuming that United States v. East, supra, is constitutionally sound, we believe that all legitimate questions arising on post-conviction motions concerning the waiver of indictment for an offense committed outside of the district of arrest could be fairly settled in practically every future case on the basis of the files and records in the sentencing court if the United States District Attorney in the district of the offense would, in all Rule 20 cases, file a proposed information in the district of the offense and forward copies of that proposed information to the United States District Attorney in the district of the defendant's arrest *before* waiver of indictment is made in the district of the arrest under Rule 7.

The district of the arrest, which will ultimately impose sentence, would then have a copy of precise information with which the defendant would be charged for use when waiver of indictment is made in the district of the arrest. Obvious potential questions of a meaningful and voluntary waiver of indictment could effectively and fairly be eliminated at the outset of the case and post-conviction motions could later be fairly ruled on the basis of the files and records of the case, should such a motion be filed.

The Rule 20 policy established by this Court last July recommended to our United States Attorney that he attempt to get the district attorneys of the districts of the offense to add that procedural step to the existing Rule 20 practice. We were also hopeful that the Assistant Attorney General in general charge of Rule 20 procedures (if there is such a person) would approve our suggestion and accordingly would officially advise all district attorneys throughout the United States to cooperate with all district attorneys receiving Rule 20 transfers in the district of the arrest because, after all, it is the judges of the district of arrest who must entertain the anticipated Section 2255 motions and applications for writs of coram nobis.

We were then of the opinion and we are now of the opinion that it is entirely reasonable for this Court to insist that a district attorney in the district of the offense take this simple procedural step to improve the files and records of this Court in Rule 20 cases that the district of the offense will never hear of again—and which represents a potential post-conviction proceeding for this Court—as a condition to our acceptance of particular Rule 20 cases. Nor can we conceive that.

district judges throughout the country would not instruct their clerks to accept "premature" filings of proposed Rule 20 informations because all district judges face the same Section 2255 potential involved in the acceptance of Rule 20 transferred cases.

Our decision in this case that Boyes v. United States, supra, requires something less in order to make a sentence imposed in a Rule 20 case immune from successful attack is not to be construed as any change in the policy established by this Court last July. The policies of judicial administration adopted by this Court are not designed to comply only with minimum procedures that our controlling courts have ruled to be not unconstitutional; they are designed to promote the fair and efficient administration of justice.

While the efficient disposition of frivolous post-sentence reviews on the basis of our files and records is not without its own importance, the basic consideration underlying our policy determination that one more procedural step be added to the present Rule 20 practice was our conviction that the addition of such a step would be calculated to focus the attention of all persons concerned, including the defendant, who is more vitally concerned than anyone else, on exactly what rights are being waived and exactly what judicial processes are being utilized to enable a defendant to clean up all federal charges against him before a single federal district judge.

In anticipation of possible unborn Section 2255 motions in cases other than this, we reiterate that our view and local policy as to how Rule 20 procedures may be improved does not in any way militate against our determination that Boyes v. United States, supra, controls this case and cases presenting similar factual situations. Our comment concerning the improvement of Rule 20 procedures merely suggests that had such procedures been followed in connection with the petitioners here involved, we are convinced

that the questions presented by these cases, either would not have been raised, or, if they had been raised, they would have been fairly and routinely determined on the basis of the files and records of this Court. All of which is in introduction to the last necessary point of discussion and our ultimate order directing further proceedings.

### Discussion and Order Directing Further Proceedings

In footnote 5 above we noted that possible fact issues might still be lurking in these cases. On January 25, 1965, petitioner Cope advised us in an unsworn letter that he had studied the recently filed brief of the Government and that he had concluded that the determination of his case "depends on my having signed the consents to transfer *after* the informations were filed." And in so stating, he was correct.

But petitioner Cope also stated in that letter that "the only papers I signed were signed in open court on April 1, 1955 and I reject any stipulation which avers to the contrary." He added: "I suggest a hearing to establish the facts."

On January 26, 1965, coincidentally or otherwise, we also received an unsworn letter from petitioner Potter. Petitioner Potter advised us that he had also examined the stipulation of facts recently filed. He stated that he wanted the record to show that he generally protested the stipulated facts because they "are so far from the facts, [that] I move we have a hearing instead of wasting time on an agreement that can only waste the court's time."

Petitioner Potter specifically protested that "the transcript on May 6, 1955, will show my attorney did not show up and Judge Whittaker said we could go on without him." Petitioner also contends that "there was nothing or no one to tell me what the different courts are, I understood I was to get one sentence for all, and stated so * * * I would like a

hearing so I'll know if there are other mistakes."

It should be added that petitioner Cope alleged in his original application for relief that he signed the "consents to transfer * * * on April 1, 1955" in order to have a factual basis for contending that "at the time of signing consents to transfer * * * there were no charges pending against him in the districts involved." His argument, made without the assistance of counsel, was obviously based on the idea that only a question of law was presented. Petitioner Cope was so confident of the truth of his allegation that in argument he contended that the files of this Court would support his claim "unless the Government wishes in some way to impeach its own records in this case." We have found, of course, that petitioner Cope's factual allegation is not true and that the burden and necessity for the impeachment of the files and records of this Court rests on him; not the Government.

It should also be added in connection with petitioner Potter that he, before he was represented by counsel, alleged that he signed his Rule 20 consents and requests to transfer on May 9, 1955 (where the date "May 9, 1955" comes from we have no idea) in order to have a factual base for alleging that "the record will clearly show that I never received copies of the information before signing these requests and further that no information had ever been filed against me in any of the three districts at the time I signed the requests."

We have, of course, stated the facts established by the files and records of this Court concerning the specific matters that both petitioner Cope and petitioner Potter now intimate in their recent unsworn letters are not true.

Our findings also demonstrate that the allegations made by both petitioners before we appointed counsel to represent them are not in any way supported by the files and records of this Court, as both of them so confidently asserted; indeed, the files and records of this Court establish that the allegations made by petitioner Potter and by petitioner Cope, without benefit of counsel, are patently false.

Petitioner Cope was, of course, correct in his most recent letter that the only papers executed by him in open court on April 1, 1955 were the waivers of indictment. But we have before us as we write three separate Rule 20 consents and requests for transfer, all purportedly executed by petitioner Cope during the month of May of 1955. The signatures on those Rule 20 consents look, to this Court's unexpert eye, remarkably like the signature that petitioner Cope has used in his not infrequent letters to this Court.

Petitioner Cope's signatures on each of those Rule 20 consents and requests to transfer are witnessed by other persons, including his then retained attorney, but we suppose that if petitioner Cope wishes to put in formal issue the validity of his signatures, we are duty bound to permit him to do so. We will not do so, however, until after he has consulted with counsel, as we shall indicate later.

What we have said concerning the dates upon which the particular Rule 20 consents and requests to transfer were executed by petitioner Cope and the manner in which they were signed and witnessed by third persons is equally applicable to dates and manner of execution of the Rule 20 consents by petitioner Potter. The files and records show that each of petitioner Potter's Rule 20 consents were executed by him and witnessed by others long after May 9, 1955 and at a time *after* the informations were actually filed in the respective courts of the various alleged offenses. We add that the signatures on those documents look remarkably like the signatures of petitioner Potter that we have not infrequently seen in times past.

The various portions of the transcript of the proceedings concerning petitioner

Potter that we have quoted above establish that while it is true that his attorney did not appear with him on May 6, 1955, it is also true that petitioner Potter's appearance alone was at the request of his attorney and that, contrary to petitioner Potter's present unsworn statement, both the Assistant United States Attorney and Judge Whittaker told him a great deal about the charges that would, at his request, be made in other districts concerning the bank robberies in Chicago, Kouts, Indiana, and St. Louis, Missouri and transferred to this Court.

Apart from the fact that petitioner Potter might want to put in issue the truth of what was said to him on May 6, 1955, by the Assistant United States Attorney and by Judge Whittaker, we must take notice of petitioner Potter's unsworn statement that he understood he was to get only one sentence for all offenses.[7]

We recognize that petitioner Potter does not state in his unsworn letter written without advice of counsel how he came to have such an understanding; but we also recognize that the rules of decision of our immediate controlling court are tending in the direction that a district court should hold a post-conviction hearing whenever a particular prisoner wishes to put in issue any factual contention that may meet a particular prisoner's untrained fancy.

We have expressed in several opinions our feeling that automatic and literal application of the needed and required procedural reforms in post-conviction review established by the Supreme Court could well lead to unjust, unnecessary and in-

discriminate prosecution for offenses that may be committed almost inadvertently by prisoners serving long sentences who, without benefit of competent legal counsel, understandably grasp at the straws of hope they winnow from the reports of cases totally dissimilar from their own.

Of course, threats of prosecution for perjury should not be made, either directly or indirectly, to any prisoner who wishes to exercise rights guaranteed him by the Constitution and the laws of the United States.

But neither should a prisoner be led to believe that because he is a prisoner in a federal institution that he is immune from further prosecution; and certainly no prisoner should labor under the erroneous impression that the judiciary of the United States instead of the Department of Justice determines whether a prosecution for perjury will or will not be filed in connection with testimony adduced at a post-conviction hearing.

As long as a particular prisoner tells his "Munchausen" tales (Machibroda v. United States, 368 U.S. 487 at 497, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962)), to a district judge of the United States he is relatively safe in his efforts to twist the files and records; but when he so testifies in a public post-conviction hearing, officials of the United States other than a particular district judge acquire interests in the litigation and the understanding tolerance of the district judge is no longer the controlling factor over the prisoner's ultimate fate.

When a hearing is ordered, the determination of whether a particular prisoner merely told a Munchausen tale

---

7. In footnote 2 above we noted an inconsistency between a position maintained by petitioner Potter in his December 12, 1962, motion and a position he would now attempt to maintain.

His present unsworn statement that "I understood I was to get one sentence for all" also is obviously inconsistent with his 1962 protest against Judge

Whittaker's legal power to impose consecutive sentences. His present assertion that he understood that such power would not be exercised by Judge Whittaker is quite different from his 1962 contention that his consecutive sentences were void only because Judge Whittaker did not have legal authority to impose them.

to get a short vacation trip from his place of confinement or whether he should be charged with perjury for having allegedly falsely testified, for example, that an F. B. I. agent beat him up to force his confession of a crime he did not commit, (see United States v. Roe, W.D.Mo. 1963, 213 F.Supp. 444, for just such a case tried in this Court), is a matter within the sole discretionary power of the executive branch of the Government, uninfluenced by how tender may be the mercy of the particular district judge who ordered the Section 2255 hearing to be held.

In the final analysis, courts must rely upon the competence and integrity of the Bar to keep the fine balance that must be maintained if broad justice is to be administered in particular post-conviction cases and if something almost akin to entrapment of an uneducated and friendless prisoner is to be avoided.[8] We have made it a practice to appoint counsel experienced in post-conviction remedies in cases such as those now before us (the greatest and almost only source of supply in this district are former law clerks of the judges of this Court, a status held by Mr. Millert in the cases at bar).

We would not have appointed present counsel for the petitioners if we had not had every confidence that they would vigorously represent their respective clients. The briefs that have been filed have confirmed our original confidence. We also have confidence that Mr. Millert and Mr. Odegard will counsel further with their respective clients in order that the petitioners are fully advised concerning the steps they want and should take

in regard to whether further evidence or testimony is necessary to raise and preserve every possible legal point or factual issue that petitioners need in this record for the purpose of relief in this Court or for further appellate review of the questions we have decided. We are also confident that present counsel, as have counsel we have appointed in other cases, will fully advise and assist petitioners in regard to any and all applications for executive clemency that may be appropriate. We do not know what more can be done to protect petitioners' rights and to protect petitioners from themselves, if indeed, such protection is, in the judgment of competent legal counsel, in fact necessary.

■ We therefore direct that Mr. Millert and Mr. Odegard confer with petitioners Potter and Cope concerning their cases and report to the Court in a writing signed by them and by both petitioners as to whether a hearing is requested in connection with the matters mentioned in petitioner Potter's letter to this Court dated January 26, 1965, and petitioner Cope's letter of January 25, 1965, or in connection with any other factual matters that may properly be the subject of a formal hearing, including those alleged in both petitioners' original pleadings that were filed without benefit of counsel.

If, in light of the requested report, we determine that no hearing is either requested or should be ordered held, we now determine that a final appealable order denying relief on the merits will be entered in both cases.

If, on the other hand, an order is entered directing that a hearing be held,

8. The problem many prisoners face is not an inability to express themselves in writing; the prisoner's problem is his lack of professional knowledge and the absence of legal advice as to what he should or should not write. For an example of articulate prisoner writing, see the article entitled "Leavenworth: The Early Years", published in New Era, Vol. 18, No. 1–2, summer 1964, page 51, by one Jack Cope. That article is a condensation of the first three chapters from "A History of the United States Penitentiary at Leavenworth, Kansas" that petitioner Cope is presently writing. New Era has, as petitioner Cope points out on page 57 of his excellent article, the distinction of being "one of the oldest continually published prison publications in the United States."

then appropriate direction will thereafter be made consistent with what we have determined in this opinion.

Counsel for petitioners shall confer with petitioners and thereafter prepare and file their report on or before February 15, 1965. That report, as above indicated, shall be personally signed by both petitioners and their respective signatures shall be sworn to and witnessed by an appropriate attesting official.

A copy of that report shall be served on counsel for the Government who shall file a statement of the Government's position in regard to petitioners' report as may be appropriate. The Government shall serve on opposing counsel, forward copies to petitioners personally, and file its statement within ten (10) days after petitioners' report is filed.