**Jackie RICHARDSON, Petitioner,**

v.

**David MILLER, Respondent.**

**No. 88–1136–CV–W–9–JWO–P.**

United States District Court,
W.D. Missouri, W.D.

Sept. 13, 1989.

Jackie E. Richardson, Boonville, Mo., pro se.

Patrick King, Mo. Atty. Gen., Jeff City, Mo., for Miller.

**MEMORANDUM AND ORDERS DIRECTING FURTHER PROCEEDINGS**

JOHN W. OLIVER, Senior District Judge.

**I**

Order (1) entered in this case on June 30, 1989 denied the prayer of the respondent's response that this Court dismiss the pending petition for habeas corpus without further judicial proceedings. 716 F.Supp. 1246. Order (2)(a) entered the same day required the respondent to file a supplemental response directed to the merits of petitioner's federal ineffective assistance of counsel claim.

Order (2)(b) entered pursuant to Rule 7 of the Rules Governing Section 2254 Cases, required the respondent to attach a copy of the transcript of petitioner's plea of guilty, together with all other State court materials relevant to the determination of the merits of the pending petition as an exhibit to respondent's supplemental response.

We have considered the five exhibits attached to respondent's supplemental response filed pursuant to Order 2(b) and find and conclude that the interests of justice require that counsel be appointed to represent the petitioner in this proceeding as provided in 18 U.S.C. § 3006A(a)(2)(B).[1] Appointed counsel will be directed to confer with the petitioner and to prepare, serve, and file a report recommending what further proceedings should be directed under the factual circumstances of this case.

The reasons why the interests of justice require the appointment of counsel and the filing of a report will be stated in some detail.[2]

1. We also find and conclude that petitioner is a "person financially unable to obtain adequate representation" within the meaning of 18 U.S.C. § 3006A(a) and therefore a "financially eligible person" within the meaning of 18 U.S.C. § 3006A(a)(2)(B) who is seeking relief under 28 U.S.C. § 2254.

2. Order 2(c) and Order 2(d) required the respondent to include as a separate part of the supplemental response a particularized statement in

## II

### A.

The Advisory Committee Note to Rule 4 of the Rules Governing Section 2254 Cases appropriately states that "Rule 4 outlines the options available to the court after the petition is properly filed." That Note makes clear that there are at least three available options: (1) the district court is authorized to enter an order summarily dismissing the petition, (2) to enter an order requiring the respondent to file an answer, or (3) to "take such other action as the judge deems appropriate."

While the Note to Rule 4 rejected the suggestion that "an answer should be required in every habeas proceeding, taking into account the usual petitioner's lack of legal expertise and the important functions served by the return," it nevertheless directed attention to 28 U.S.C. § 2243 which provides in part that the court shall "determine the facts, and dispose of the matter as law and justice require." Rule 4 recognizes that a federal habeas corpus court must obtain accurate factual information in regard to the State court proceedings before it reaches the merits of an alleged federal constitutional claim.

Before this case was transferred to this division, Judge Bartlett made an express finding that "petitioner's claims ... do not appear frivolous or malicious" and entered an order directing the respondent to file an answer to the petition. *See* Doc. # 2 at 2. Rule 5 of the Rules Governing Section 2254 Cases provides that the answer of the respondent shall respond to the allegations of the petition and that the relevant transcripts of trial, pretrial, sentencing and postconviction proceedings shall be attached to the answer.

The Advisory Committee Note to Rule 5 significantly states that the furnishing of the transcripts of the State court proceedings serves the purpose of informing "the court and petitioner as to what factual allegations can be checked against the actual transcripts." Rule 5 was thus designed to assist the district court in its selection of one of the three options provided it in Rule 4.

In a similar manner, Rule 7(a) of the Rules Governing Section 2254 Cases vests power in the district court to have the record expanded in order to obtain additional relevant documentary and other data that may be needed to determine how the case should be processed.[3] The Advisory Committee Note to Rule 7 explains that the purpose of Rule 7 is "to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing" and that "expansion of the record will, hopefully, eliminate some unnecessary hearings."

It is thus clear that Rules 4, 5, and 7 and the Advisory Committee Notes to those rules were obviously designed to regulate the orderly and efficient development of a Section 2254 habeas corpus proceeding and to provide the district court with the necessary factual data required for the discharge of the duty imposed by Rule 8(a) of the Rules Governing Section 2254 Cases. That rule provides that the district judge "after the answer and the transcript and record of state court proceedings are filed, shall, upon a review of those proceedings and of the expanded record, if any, determine whether an evidentiary hearing is required." Rule 8(a) then provides that if "it appears that an evidentiary hearing is not required, the judge shall make such disposition of the petition as justice shall require."

---

regard to the exhaustion and jurisdictional questions discussed in our June 30, 1989 memorandum opinion. Respondent's supplemental response contains a lengthy statement in response to those orders. We need not, and therefore do not discuss the numerous arguments made in response to Order 2(c) and Order 2(d) in light of the orders made today. Nor is it necessary nor appropriate for appointed counsel to discuss that portion of the supplemental response in his

report recommending the direction of further proceedings.

**3.** Rule 7(a) provides that "[i]f the petition is not dismissed summarily the judge may direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition."

The Advisory Committee Note to Rule 8(a) states that this rule "outlines the procedure to be followed by the court immediately *prior* to ... the determination of whether to hold an evidentiary hearing." (Emphasis added). The Note makes clear that the determination of whether an evidentiary hearing is required "is to be made upon a review of the answer, the transcript and record of state court proceedings, and if there is one, the expanded record."[4] The Note further stated that Rule 8(a) contemplates that the complete State record "will be taken into account" in the determination of whether an evidentiary hearing is to be ordered and added that this "is especially important in view of the standard set down in *Townsend* for determining *when* a hearing in the federal habeas proceeding is mandatory." (The Note's emphasis).[5]

### B.

We have discussed the Rules Governing Section 2254 Cases in some detail for the reason that those rules were promulgated by the Supreme Court, and approved, with changes, by the Congress in 1976, effective February 1, 1977, in recognition that the questions that actually may be presented in a federal habeas corpus proceeding may be entirely different from those alleged in a *pro se* petition drafted by a state prisoner or by a fellow inmate.[6] Experience in processing numerous state prisoner habeas corpus cases over the years establishes that this case may be such a case.

4. In explanation the Note quoted the following from *Townsend v. Sain,* 372 U.S. 293, 319, 83 S.Ct. 745, 760, 9 L.Ed.2d 770 (1963): "Ordinarily [the complete state-court] record—including the transcript of testimony (or if unavailable some adequate substitute, such as a narrative record), the pleadings, court opinions, and other pertinent documents—is indispensable to determining whether the habeas applicant received a full and fair state-court evidentiary hearing resulting in reliable findings."

5. The Note quoted the following familiar standard mandated by *Townsend:* "The appropriate standard * * * is this: Where the facts are in dispute, the federal court in habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court, either at the time of the

### III

#### A.

Judge Bartlett's initial order to show cause contained an accurate summary of petitioner's ineffective assistance claims as those claims were broadly alleged in the *pro se* petition. The exhibits now before the Court, however, require that those *pro se* allegations "be checked against the actual transcripts" in accordance with the Advisory Committee Note to Rule 5 of the Rules Governing Section 2254 Cases. Petitioner quite vaguely alleged as ground one of his *pro se* petition that "all [his] counsel wanted to do was make a deal and plead guilty." Petition at 6. Petitioner indefinitely alleged as ground two of his *pro se* petition that "appointed trial counsel did not question the plaintiff about answers that was [sic] given the prosecutor." *Id.*

Petitioner more specifically alleged in support of his ground three that defense counsel:

Failed to bring forth witness for defense, that were readily available. Eye witness at the seen [sic], witness to the fact that I, the movant, never touched or threatened the plaintiff Chico Johnson. (Ms. Joe Macantire) Eye witnesses to the fact that Chico Johnson came to my (the movants) house carring [sic] a baseball bat upon which time he made threats and swung the baseball bat at me. Witness —(Mrs. Helen Richardson Ms. Tura Rich-

trial or in a collateral proceeding. 372 U.S. at 312 [83 S.Ct. at 756]."

6. Professor Yackle in Section 111 at page 431 of *Postconviction Remedies* suggests that the new rules were "apparently the outgrowth of several factors—the plainly outdated procedural guides in the Judicial Code, uncertainty about the applicability of other federal rules of procedure, and the curious blend of criminal and civil elements in postconviction remedies." Professor Yackle was certainly correct in pointing out that "in *Harris v. Nelson* [394 U.S. 286, 300 n. 7, 89 S.Ct. 1082, 1091 n. 7, 22 L.Ed.2d 281], ... the Supreme Court endorsed Justice Harlan's suggestion that the formal rule-making machinery be put in gear to establish consistent and workable procedures for modern postconviction remedies." *Id.*

ardson).[7]

*Id.* at 8.

In part III of *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963), the Court stated the standards under which it is mandatory for a federal habeas corpus court to conduct an evidentiary hearing unless the petitioner was afforded a full and fair fact hearing in the State court.[8] In part IV of that case, however, the Court added several observations concerning the proper application of the standards stated in part III of that opinion. The Court first observed that:

> The purpose of the test is to indicate the situations in which the holding of an evidentiary hearing is mandatory. In all other cases where the material facts are in dispute, the holding of such a hearing is in the discretion of the district judge.... In every case he has the power, constrained only by his sound discretion, to receive evidence bearing upon the applicant's constitutional claim.

372 U.S. at 318, 83 S.Ct. at 760.

The Court concluded its first observation by making clear that the federal district court's power and discretion to order evidentiary hearings should be exercised with the greatest care. The Court stated in that regard that:

> There is every reason to be confident that federal district judges, mindful of their delicate role in the maintenance of proper federal-state relations, will not abuse that discretion. We have no fear that the hearing power will be used to subvert the integrity of state criminal justice or to waste the time of the federal courts in the trial of frivolous claims.

*Id.*

In its fourth and final observation in part IV of *Townsend v. Sain,* the Court stated that:

It rests largely with the federal district judges to give practical form to the principles announced today. We are aware that the too promiscuous grant of evidentiary hearings on habeas could both swamp the dockets of the District Courts and cause acute and unnecessary friction with state organs of criminal justice, while the too limited use of such hearings would allow many grave constitutional errors to go forever uncorrected. The accommodation of these competing factors must be made on the front line, by the district judges who are conscious of their paramount responsibility in this area.

*Id.* at 319, 83 S.Ct. at 760.

The necessity of guarding against permitting too promiscuous use of a postconviction proceeding and the need to identify cases that may present valid constitutional claims that must be determined on their merits has been recognized since at least 1942 when the Judicial Conference of the United States appointed a committee "to study the entire subject of procedure on applications for habeas corpus in the federal courts." *See* the 1942 Report of the Judicial Conference at 18. The work of that committee led to the eventual adoption of 28 U.S.C. § 2255 in 1948.

When *United States v. Hayman,* 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952), affirmed the constitutionality of the postconviction procedures provided in Section 2255 cases for federal prisoners, the Court noted that the "great increase in the number of applications for habeas corpus filed in the federal courts by state and federal prisoners" had been occasioned by the Court's earlier decisions in *Moore v. Dempsey,* 261 U.S. 86, 43 S.Ct. 265, 67 L.Ed. 543 (1923) (mob domination of trial); *Mooney v. Holohan,* 294 U.S. 103, 55 S.Ct. 340, 79

---

**7.** We need not discuss petitioner's conclusory claim alleged as his ground four that defense counsel was ineffective in that he "failed to file a motion to suppress evidence that was detramental [sic] to movants case." *Id.* at 8. Apart from principles stated in *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), it is clear that petitioner alleged no facts in support of that claim. Indeed, the petitioner

does not even identify the evidence he believes should have been suppressed.

**8.** As noted in footnotes 4 and 5 above, the mandatory hearing standards articulated in *Townsend v. Sain* were quoted in the Advisory Committee Note to Rule 8 of the Rules Governing Section 2254 Cases.

L.Ed. 791 (1935) (knowing use of perjured testimony by prosecution); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (no intelligent waiver of counsel in federal court); *Waley v. Johnston,* 316 U.S. 101, 62 S.Ct. 964, 86 L.Ed. 1302 (1942) (coerced plea of guilty); *United States ex rel. McCann v. Adams,* 320 U.S. 220, 64 S.Ct. 14, 88 L.Ed. 4 (1943) (no intelligent waiver of jury trial in federal court); *House v. Mayo,* 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739 (1945) (denial of right to consult with counsel). *Id.* at 212, 72 S.Ct. at 268.

*Hayman* recognized that the cases cited had definitively established the rule that permits "challenge of convictions on facts *dehors* the record" (*id.*) and that the rule must be applied even though "a large volume of applications for habeas corpus are repetitious and patently frivolous" and often "are found to be wholly lacking in merit when compared with the records of the sentencing court." *Id.* at 212–13, 72 S.Ct. at 269.

*Hayman* quoted the portion of the Statement submitted to Congress on behalf of the Judicial Conference Committee on Habeas Corpus Procedure, written by Judge Kimbrough Stone of the Eighth Circuit and approved by Chief Justice Stone, which stated that the postconviction remedy provided in Section 2255 "is intended to be as broad as habeas corpus." *Id.* at 217, 72 S.Ct. at 271. In footnote 25 on page 217, 72 S.Ct. on page 271 of *Hayman,* the Court also quoted the Statement's observation that "[m]ost habeas corpus cases raise fact issues involving the trial occurrences or the alleged actions of judges, United States attorneys, marshals or other court officials" and that the attendance of those officials "is sometimes necessary to refute particular testimony which the prisoner may give ... because experience has demonstrated that often petitioner will testify to anything he may think useful, however false."

The Statement recognized that the postconviction remedy provided in Section 2255 could be said to provide "the incentive to file baseless motions in order to have a 'joy ride' away from the prison at Government expense." *Id.* The Statement concluded, however, that such a factor was outweighed by the mandate of the Great Writ and by the advantage of having an available postconviction remedy formerly provided by a habeas corpus proceeding being conducted in the district of the sentencing court rather than in the district in which the defendant was being held in custody.

The possibility that a prisoner may be tempted to file what may later be determined to be a frivolous postconviction Section 2255 motion or a Section 2254 habeas petition was more recently recognized in *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). The Court stated that "[m]ore often than not a prisoner has everything to gain and nothing to lose from filing a collateral attack upon his guilty plea." *Id.* at 71, 97 S.Ct. at 1627. *Blackledge* recognized that a "collateral attack may also be inspired by 'a mere desire to be freed temporarily from the confines of the prison.' *Price v. Johnston,* 334 U.S. 266, 284–285 [68 S.Ct. 1049, 1059–1060, 92 L.Ed. 1356]; accord, *Machibroda v. United States,* 368 U.S. 487, 497 [82 S.Ct. 510, 515, 7 L.Ed.2d 473] (Clark, J., dissenting)." [9] *Id.* at 72, 97 S.Ct. at 1628. That case held, however, that the state prisoner was nevertheless entitled to a full and fair evidentiary hearing of his postconviction claim.

### B.

Experience establishes that procedural steps may be directed that will assure that federal courts not waste their time in processing what may be frivolous claims but which will also avoid a too limited use of its power to hold an evidentiary hearing. The procedures that may be directed must, of course, be consistent with the principles articulated in *Blackledge v. Allison, supra,* and with those stated in the earlier cases of

---

**9.** Justice Clark stated in his *Machibroda* dissent that he believed that the majority opinion in that case would serve as "an invitation to prisoners, always seeking a sojourn from their keep- ers, to swear to 'Munchausen' tales when self-interest readily leads to self-deception in § 2255 applications." 368 U.S. at 497, 82 S.Ct. at 515.

*Machibroda v. United States, supra,* and *Fontaine v. United States,* 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973). For "a prisoner in custody after pleading guilty, no less than one tried and convicted by a jury, is entitled to avail himself of the writ in challenging the constitutionality of his custody." [10] *Blackledge v. Allison,* 431 U.S. at 72, 97 S.Ct. at 1628.

*Blackledge,* consistent with *Machibroda* and *Fontaine,* recognized the long-established rule that an evidentiary hearing is required if the allegations of a postconviction motion or petition, if proved, would entitle a Section 2255 movant or a Section 2254 habeas petitioner to postconviction relief. The Court stated in *Blackledge,* however, that: "To allow indiscriminate hearings in federal postconviction proceedings, whether for federal prisoners under 28 U.S.C. § 2255 or state prisoners under 28 U.S.C. §§ 2241–2254, would eliminate the chief virtues of the plea system—speed, economy, and finality." *Id.* at 71, 97 S.Ct. at 1628.

*Blackledge* therefore noted that under the then recently promulgated "Rules Governing Habeas Corpus Cases, the district judge ... may employ a variety of measures in an effort to avoid the need for an evidentiary hearing." *Id.* at 81, 97 S.Ct. at 1633. As we have noted above, those rules, in the final analysis, are consistent with the statutory direction of 28 U.S.C.

§ 2243 that a federal habeas court shall "determine the facts, and dispose of the matter as law and justice require."

Federal district courts that have been required over the years to process a large volume of state prisoner habeas cases have devised and followed procedures that have fairly served to determine whether an evidentiary hearing should or should not be held under the circumstances of a particular case. Those procedures, which will be followed in this case, include the appointment of counsel to represent the petitioner and serve the additional important function of focusing the attention of a petitioner on the serious consequences that could flow from the presentation of what might be considered a false claim in a federal district court.

C.

The procedures that have been consistently followed by this Court were designed in accordance with the points made in Justice Frankfurter's landmark dissenting opinion in *Darr v. Burford,* 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950), written almost forty years ago.[11] The first point to be noted is Justice Frankfurter's accurate recitation of the impact of the Habeas Corpus Act of 1867. More than a decade before the Court decided the 1963 habeas corpus trilogy, Justice Frankfurter stated that the "Act of 1867 opened wide the door

**10.** *Blackledge* specifically stated that what *"Machibroda* and *Fontaine* indisputably teach, however, is that the barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable." *Id.* at 74, 97 S.Ct. at 1629. Respondent's attempted reliance on *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), and *Tran v. Lockhart,* 849 F.2d 1064 (8th Cir.1988), a progeny of *Hill,* is untenable. *Hill* presented and decided the narrow question of the validity of a petitioner's "claim that his plea was 'involuntary' as a result of ineffective assistance of counsel because his attorney supplied him with information about parole eligibility that was erroneous." 474 U.S. at 56, 106 S.Ct. at 369. The Court simply held, without dissent, that "[w]e have never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary." *Id. Hill* may not properly be read as establishing a rule that a

*pro se* petitioner must plead with the nicety of a mythical Philadelphia lawyer.

**11.** Justice Frankfurter's dissent is properly described as a "landmark" dissent for the reason that the view he expressed in that dissent became the law of the land when *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), expressly overruled *Darr v. Burford* "to the extent it may be thought to have barred a state prisoner from federal habeas relief if he had failed timely to seek certiorari in this Court from an adverse state decision." 372 U.S. at 435, 83 S.Ct. at 847. Thus juridical history repeated itself in this complicated area of habeas corpus law. For, as Justice Frankfurter noted, Justice Holmes' dissenting opinion in *Frank v. Mangum,* 237 U.S. 309, 345–46, 35 S.Ct. 582, 594–95, 59 L.Ed. 969 (1915), "established itself as law in *Moore v. Dempsey,* 261 U.S. 86 [43 S.Ct. 265, 67 L.Ed. 543] (1923)." 339 U.S. at 233, 70 S.Ct. at 605.

to ... a conflict between State and federal authorities in relation to the administration of criminal justice." [12]  *Id.* at 221, 70 S.Ct. at 599. It is thus clear that the need to devise procedures designed to eliminate the unavoidable friction that might arise between the State and federal judicial systems has been apparent at least from the time *Powell v. Alabama* was decided in 1932 and *Mooney v. Holohan* in 1935.[13]

Perhaps the most important practical point made by Justice Frankfurter in his dissent, was his terse statement that: " 'The great writ of liberty' ought not to be treated as though we were playing a game." 339 U.S. at 225, 70 S.Ct. at 601. It was his view that the Court was indeed "playing a game" in regard to the Great Writ when it created the procedural hurdle of requiring a *pro se* state prisoner to file a petition for certiorari in the Supreme Court of the United States before he would be permitted to invoke the jurisdiction conferred on a federal district court by the Act of 1867.[14]

Justice Frankfurter's admonition that courts should not be "playing a game" with a state prisoner's right to invoke federal habeas corpus jurisdiction carried with it the complementary principle that state prisoners are not entitled to play games with either the State or federal courts when they seek postconviction relief. The difficult problem of sorting out claims that may be meritorious from those that lack any merit is complicated by the fact that most postconviction claims are filed *pro se* or with only the assistance of a fellow prisoner.

Familiar cases have, of course, established the rule that *pro se* prisoner petitions must be read with liberality and that *pro se* petitioners are held to less stringent standards than pleadings drafted by lawyers. The Rules Governing Section 2254 Cases have proven to be somewhat helpful in a screening process that must be fairly performed. But experience has established that the appointment of counsel to represent a *pro se* petitioner is by far the most effective step that may be taken to protect against playing games in a postconviction proceeding. The circumstances of this case, as now apparent from the exhibits attached to the respondent's supplemental response, establish that justice requires that petitioner be afforded the services of appointed counsel.

Appointed counsel will therefore be furnished a copy of all the exhibits attached to the respondent's supplemental response. After careful review of those exhibits, appointed counsel will personally confer with the petitioner and direct petitioner's attention to factual circumstances apparently established by the State court record. There-

---

**12.** Justice Frankfurter further stated that the conflict "has become intensified during the last twenty years because of the increasing subjection of State convictions to federal judicial review through the expanded concept of due process. See, *e.g., Powell v. Alabama,* 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158], and *Mooney v. Holohan,* 294 U.S. 103 [55 S.Ct. 340, 79 L.Ed. 791]" and added that it "ought not to be too surprising, therefore, that the full implications of federal restrictions upon the free range of a State's criminal justice have taken time to unfold." *Id.*

**13.** Justice Frankfurter's accurate recitation of the conflict created by the Act of 1867 puts in focus the Supreme Court of Missouri's unfamiliarity with that history as evidenced by its statement in *State v. Brizendine,* 445 S.W.2d 827, 828 (Mo.1969) (en banc), that it was, in fact, the 1966 Code Revision of 28 U.S.C. § 2254 that made the Supreme Court of Missouri "subservient to the *trial courts* of the Federal judicial system." (The court's emphasis).

**14.** *Fay v. Noia* recognized that more than a decade of experience with the procedural default rule of *Darr v. Burford* established that the Court had indeed been "playing a game" with the Great Writ. For the Court held that "the requirement of *Darr v. Burford* has proved only to be an unnecessarily burdensome step in the orderly processing of the federal claims of those convicted of state crimes." 372 U.S. at 437, 83 S.Ct. at 848. The Court accordingly expressly overruled that portion of *Darr v. Burford* and added that "[f]urthermore, our decision today affects all procedural hurdles to the achievement of swift and imperative justice on habeas corpus, and because the hurdle erected by *Darr v. Burford* is unjustifiable under the principles we have expressed, even insofar as it may be deemed merely an aspect of the statutory requirement of present exhaustion, that decision in that respect also is hereby overruled." *Id.* at 435–36, 83 S.Ct. at 847.

1094

after, appointed counsel will prepare, serve, and file a report with the Court.

#### D.

Appointed counsel shall advise petitioner that this Court made reference to Justice Clark's dissent in *Machibroda* in *Potter v. United States*, 36 F.R.D. 394, 411–12 (W.D. Mo.1965), when, in commenting on how a Section 2255 movant might be subjected to a later federal perjury prosecution, we stated that:

> As long as a particular prisoner tells his "Munchausen" tales (*Machibroda v. United States*, 368 U.S. 487 at 497, 82 S.Ct. 510 [at 515], 7 L.Ed.2d 473 (1962)), to a district judge of the United States he is relatively safe in his efforts to twist the files and records; but when he so testifies in a public postconviction hearing, officials of the United States other than a particular district judge acquire interests in the litigation and the understanding tolerance of the district judge is no longer the controlling factor over the prisoner's ultimate fate.

> When a hearing is ordered, the determination of whether a particular prisoner merely told a Munchausen tale to get a short vacation trip from his place of confinement or whether he should be charged with perjury for having allegedly falsely testified, for example, that an F.B.I. agent beat him up to force his confession of a crime he did not commit, (see *United States v. Roe*, W.D.Mo.1963, 213 F.Supp. 444, for just such a case tried in this Court), is a matter within the sole discretionary power of the executive branch of the Government, uninfluenced by how tender may be the mercy of the particular district judge who ordered the Section 2255 hearing to be held.[15]

Petitioner should also be advised that this Court pointed out in *Potter* a long time ago that "threats of prosecution for perjury should not be made, either directly or indirectly" (*id.* at 411) and that this Court was of the view that the most effective protection against "unjust, unnecessary and indiscriminate prosecutions for offenses that may be committed almost inadvertently by prisoners" may be attained by the appointment of competent counsel to represent a prisoner who, in the first instance, must proceed *pro se*. *Id.* at 411. That protection has effectively maintained the fine balance of the competing factors involved over the years. We therefore follow that practice in this case.

In *Potter*, we expressed "our feeling that automatic and literal application of the needed and required procedural reforms in post-conviction review established by the Supreme Court could well lead to unjust, unnecessary and indiscriminate prosecution for offenses that may be committed almost inadvertently by prisoners serving long sentences who, without benefit of competent legal counsel, understandably grasp at the straws of hope they winnow from the reports of cases totally dissimilar from their own."[16] *Id.*

We recognized that we were under duty to "hold a postconviction hearing whenever a particular prisoner wishes to put in issue any factual contention that may meet a particular prisoner's untrained fancy" (*id.*) and that if one of the petitioners "wishes to put in formal issue the validity of his signatures, we are duty bound to permit him to do so." *Id.* at 410. We added that "[w]e will not do so, however, until he has consulted with counsel." *Id.*

*Harris* was cited by the Court in *Blackledge*, 431 U.S. at 82 n. 25, 97 S.Ct. at 1633 n. 25.

**15.** This Court is not the only court that has recognized the potential danger of perjury being committed in a habeas corpus proceeding. Indeed, Rule 2 of the Rules Governing Section 2254 Cases provides that the petition for habeas corpus "shall be signed under penalty of perjury by the petitioner." *See*, for further example, the statement of Judge Winter in his concurring opinion in *Walters v. Harris*, 460 F.2d 988, 995 (4th Cir.1972): "If penalties for perjury are strictly enforced, the making of frivolous allegations will be held to a minimum." *Walters v.*

**16.** In *Potter* the movants seeking postconviction relief had indicated in certain *pro se* communications to the Court that they wished to put in issue the accuracy of factual data apparently established by the transcripts of their guilty plea proceedings and the validity of movants' signatures on various relevant documents.

E.

We have consistently followed the practice of appointing counsel over the years in postconviction proceedings. *Jedby v. Swenson,* 261 F.Supp. 209 (W.D.Mo.1966), decided a year after *Potter,* illustrates our extension of that practice in state prisoner habeas cases.[17]

In *Russell v. Jones,* 679 F.Supp. 949, 950 (W.D.Mo.1988), we noted that for reasons stated in an earlier memorandum opinion handed down on June 17, 1987, we had appointed counsel to represent the state prisoner habeas petitioner in that case and that appointed counsel had been directed "to make an appropriate factual investigation and to file a report of his investigation."

Our June 17, 1987 memorandum opinion was not published in Federal Supplement. It was published in 1987 WL 54373 (W.D. Mo.). The reasons why it was necessary to appoint counsel in *Russell* and the directions given counsel were stated as follows:

The significance of the failure of the State courts to conduct an appropriate evidentiary hearing is directly related to what further proceedings may be required to determine petitioner's exhausted claim of ineffective assistance of trial counsel. The first step, of course, requires the appointment of counsel to represent the petitioner in this Court. Appointed counsel will be required to conduct an appropriate investigation of the factual circumstances that are relevant to the determination of whether trial

counsel rendered "reasonably effective assistance" in accordance with the standard articulated in *Strickland v. Washington,* 466 U.S. 668, 683 [104 S.Ct. 2052, 2062, 80 L.Ed.2d 674] (1984), and the progeny of that case.

That investigation will necessarily include investigation of what the petitioner may have advised trial counsel in regard to what witnesses he wanted to call at trial, what testimony those witnesses, if any, would have given had they been called, and all other factual data that may be relevant under the circumstances.

. . . .

If, as a result of that investigation, appointed counsel determines that there is substantial factual support for petitioner's claim of ineffective assistance of trial counsel, the Court will be so advised and it will, in that event, be necessary for the Court to direct that an evidentiary hearing be conducted. On the other hand, should appointed counsel's investigation determine that petitioner's ineffective assistance of trial counsel claim lacks adequate factual support under the circumstances, he will so state in a report to the Court. Appointed counsel's report will, of course, state the scope of his investigation and the reasons for his view.

1987 WL 54373 at 8, 11.

The report filed by appointed counsel in *Russell* "established the necessity for an evidentiary hearing."[18] 679 F.Supp. at

---

**17.** In *Jedby* we stated that "[a]t another place (see *Potter v. United States,* W.D.Mo.1965, 36 F.R.D. 394 at 411–412) we have noted the ease with which a particular inmate may make allegations in a post-conviction proceeding and the consequences that are inherent in the actual trial of the issues of fact thereby created. What we said there in regard to a federal post-conviction proceeding is applicable to a State post-conviction proceeding and counsel who will represent the petitioner should so advise him." 261 F.Supp. at 213.

**18.** The reports of appointed counsel over the years have not always recommended that an evidentiary hearing be conducted. In *Potter,* for example, the report resulted in a recommendation that no hearing be conducted and that the

pending postconviction motion be dismissed, a recommendation followed by this Court. In *Jedby,* on the other hand, a hearing was recommended and conducted and habeas relief granted. The members of the Bar appointed by this Court over the years have consistently rendered exemplary service under the particular factual circumstances of each case. When we decided *Potter* in 1965, we noted that: "In the final analysis, courts must rely upon the competence and integrity of the Bar to keep the fine balance that must be maintained if broad justice is to be administered in particular post-conviction cases and if something almost akin to entrapment of an uneducated and friendless prisoner is to be avoided." 36 F.R.D. at 412. The same thing is true today.

950. Counsel prepared an amended petition consistent with factual circumstances, an evidentiary hearing was conducted, and habeas relief was eventually denied. *Id.* at 961.

## IV

### A.

The exhibits attached to respondent's supplemental response establish that petitioner is in need of the effective assistance of counsel before proceeding further with this federal habeas corpus proceeding. Those exhibits establish without any apparent dispute that Chico Johnson and the petitioner got into a violent argument in regard to whether petitioner may have stolen a bottle of cologne and three cassette tapes from Johnson on October 28, 1986, as Johnson believed was the case. The first confrontation occurred at petitioner's Vest Circle residence. The second confrontation, out of which the offense arose, occurred sometime later at Johnson's residence on West Jackson Street.

The written statements of the various witnesses taken by the Marshall, Missouri Police Department are in general agreement that Johnson was armed with a baseball bat on both occasions and that after the first argument, the petitioner was taken to Johnson's residence by Johnson's aunt, Ms. Banks.

The statements that Johnson and the petitioner gave to the Marshall Police Department were in sharp conflict. In describing what happened when the two encountered each other the second time, Johnson stated that:

I had gotten about 5–6 feet away from Jackie when he swung the club at me. I was afraid he was going to strike me so I went back inside and got my baseball bat. I came back out and stood on the front porch and listened to Jacky. He rambled on saying things like he and I were friends, that we've known each other for a long time. I told him why don't you put the stick down and we'll talk about it.

He said, "I'll put the stick down and we'll fight head on". I agreed to this and went back inside my house where I put my bat. I came back outside and saw that Jacky still had his club. I went back inside and sat down to watch TV while Jacky was outside running his mouth.

. . . .

Right after that the police arrived and I told them that I wanted to press charges against Jacky. The club that he had swung at me was given to the police.

. . . .

I, Chico C. Johnson, do wish that Jackie Richardson be prosecuted to the fullest extent of the law.

Resp's Exh. C (Johnson's statement at 2–4).

Petitioner, on the other hand told the Marshall Police Department that on the second occasion:

Mary [Banks] called Chico to the door and he started walking toward me with a corn knife and I said you must not want to talk about it Chico because we have been friends for too long. I turned around and walked away and started up Jackson Street and I got to Jackson and Brunswick and I was stopped by one Police Officer, I think his name was Bob King. I was arrested and I asked the Officer why and he never did answer me. I could not understand why I was being arrested when Chico had the bat and corn knife. When Chico ran after me with the corn knife there was stick laying near by then I picked it up and when Chico stopped then I threw it away. I

only picked up the stick to defend myself but when he stopped I dropped the stick.

Resp's Exh. C (petitioner's statement).

The record before the Court does not show whether the three witnesses named in petitioner's *pro se* petition would or would not support ground three of petitioner's version of the second confrontation as given to the Marshall Police Department. The record does show, however, that only Ms. Maddix and Ms. Banks were identified as witnesses in the police report.[19]

## B.

Exhibit B establishes that on October 29, 1986 a felony complaint was filed charging the petitioner with assault in the first degree. On December 4, 1986, however, a felony information was filed charging petitioner with the lesser offense of assault in the second degree. Exhibit A establishes that on that same day petitioner's plea of guilty to the felony information was accepted by the Circuit Court of Saline County, Missouri.

The transcript of the guilty plea proceeding establishes the care exercised by the State trial court and by counsel for the parties in regard to petitioner's plea of guilty. That transcript shows that defendant's Exhibit A, copy of which is attached as Appendix A to this memorandum opinion, was admitted in evidence at that proceeding. Tr. 8.

Appointed counsel will carefully review petitioner's testimony in regard to that exhibit and his other testimony at the guilty plea proceeding. It is sufficient for present purposes to note that specific inquiry was made of petitioner in regard to Exhibit A's question 17: "Is there anything you have asked your attorney to do with

respect to your case that he has not done?" and that exhibit's question 28: "State in your own words what you did in committing the crime that you are charged with."

In regard to question 17, the transcript shows the following:

Q. Referring your attention to page two, question number 17, there is an answer of "yes" that has been marked out and the answer "no" has been written in. What answer to you want for that question?

A. No.

Exh. A, Tr. 6.

In regard to question 28, the transcript shows that upon examination by the State trial court the petitioner testified as follows:

Q. Mr. Richardson, did you write the answers to these questions yourself?

A. Yes, sir.

Q. Could you read me what your answer is to question number 28 there? I'm not sure I understand exactly what it says.

A. It says, "He came to my house with the bat; then I went to his house with a stick and swung it at him."

Q. All right, sir. Where did this happen?

. . . .

A. The first time it happened in my house, and then it happened again in his.

Q. All right. Well, you didn't have a stick when you were in your house?

A. No. He had the bat.

Q. All right. But when you got to his house, you had a stick?

A. Right.

19. It is entirely possible that the three witnesses named by the petitioner as potential defense witnesses in his *pro se* petition were present only when Johnson and the petitioner had their first encounter at Vest Circle. If so, it is diffi-

cult to understand how their testimony in regard to what may have happened on that occasion would be relevant in regard to what later occurred at the second encounter.

Q. All right. What kind of a stick?

A. Just a real thick, big stick.

Q. As big as his bat? Is that right?

A. Yeah. Bigger.

Q. All right. But it did happen; is that right?

A. Yeah.

*Id.* at 8–9.

Pages 10 to 15 of the transcript establish that petitioner's plea of guilty was tendered and accepted pursuant to a plea agreement. That plea agreement provided that the prosecuting attorney would recommend that petitioner would receive a five-year sentence, that execution of that sentence be suspended, and that petitioner be placed on five years supervised probation.[20] When the prosecutor made the recommendation called for by the plea agreement, the following inquiry was made:

Q. (By The Court) Mr. Richardson, is that what you understood the prosecutor was going to recommend?

A. Yes.

Q. He didn't change the plea bargain as you understood it in any way?

A. No.

*Id.* at 10.

The State trial court stated that "the Court is going to follow the prosecuting attorney's recommendation and the plea bargain as you say you understood it" and imposed the sentence, suspended its execution, and granted probation, all as recommended and in full accordance with the plea agreement. *Id.* at 10–11.

Exhibit A and Exhibit B establish that on May 19, 1988 petitioner's probation was revoked pursuant to an amended motion filed by the prosecuting attorney on May 12, 1988.[21] It is thus apparent that petitioner is in custody pursuant to the May 19, 1988 probation revocation that directed the execution of the sentence imposed on December 4, 1986.

We are satisfied that law and justice require that competent counsel be appointed to represent the petitioner in his habeas corpus proceeding for the reasons we have stated in detail. We have consulted with Kevin R. Locke, Esquire, a member of the Bar of this Court and he has advised that he is willing to accept appointment. Accordingly, it is

ORDERED (1) that Kevin R. Locke, Esquire, a member of the Bar of this Court, should be and he is hereby appointed pursuant to 18 U.S.C. § 3006A(b) to represent the petitioner in this case in accordance with the Court's findings that the interests of justice so require and that petitioner is financially unable to otherwise obtain representation. After Mr. Locke has conducted the investigation above-detailed, he shall prepare, serve and file a report recommending what further proceedings should be directed under the circumstances. It is further

ORDERED (2) that Mr. Locke shall prepare, serve and file his report within twenty (20) days of this order. If Mr. Locke needs additional time, an appropriate extension of time will be granted upon his request.

---

**20.** The plea agreement also included the dismissal of a motion to revoke probation that pended against the petitioner in another case. Tr. 13.

**21.** The transcript of the May 19, 1988 probation revocation proceeding established that petitioner confessed violation to the motion to revoke pursuant to another plea agreement. The State was advised that "Mr. Richardson has some new charges pending, and upon his confessing violation of the probation, and it being revoked, we are going to dismiss the new charges ... this is pursuant to a plea agreement." *Id.* at 18. The State trial court addressed the following questions and received the following answers from the petitioner: "Q. (By The Court) Mr. Richardson, was that your understanding of the plea agreement? A. Yeah. Q. They didn't throw you any curves or come up with any surprises? A. No. Q. That was the deal as you understood your attorney had worked out for you? A. Yes." *Id.* at 18–19.

## APPENDIX A

### TO DEFENDANTS WHO PLAN TO ENTER A PLEA OF GUILTY

DEFENDANT'S
EXHIBIT
A
/2-4-86 BO

Before a person charged with a crime is allowed to enter a plea of guilty, it is necessary for the Court to determine that such person understands his constitutional rights and that such plea is made voluntarily and with a full understanding of the consequences of his plea.

Accordingly, you are hereby advised that you have a right to a trial before either the Court or a jury; that you have the right to summons witnesses and compel their attendance to testify in your behalf; that you have the right to confront and cross-examine any witness the State may call to testify against you; that if you want a trial, you are entitled to a speedy trial; that you are presumed to be innocent and before you can be convicted, it is necessary for the State to prove your guilt beyond a reasonable doubt; that you are entitled to be represented by an attorney, and if you are unable to employ an attorney, that an attorney will be appointed by the Court to represent you without any charge; and that you have the right to consult with your attorney, members of your family, and friends before entering a plea.

$$* \quad * \quad * \quad * \quad * \quad *$$

THE FOLLOWING QUESTIONS ARE TO BE ANSWERED BY YOU UNDER <u>OATH</u>. BE SURE YOUR ANSWERS ARE CORRECT. IF YOU DO NOT UNDERSTAND ANY QUESTION, THEN DO NOT ANSWER THAT QUESTION AND IT WILL BE FULLY EXPLAINED TO YOU AT THE TIME YOU ENTER YOUR PLEA. ANSWER THE QUESTIONS (YES OR NO), AND IF ANY EXPLANATION IS NEEDED, YOU MAY EXPLAIN AT THE END OF THE STATEMENT UNDER REMARKS:

1. Do you understand the charge against you? _Yes_

2. Do you understand that by entering a plea of guilty that you are waiving, or giving up, all of the above mentioned constitutional rights? _Yes_

3. Have you been threatened or intimidated, in any manner, to cause you to enter a plea of guilty? _No_

4. Do you claim you have been mistreated, in any manner, to cause you to enter a plea of guilty? _No_

5. Do you understand that you are entitled to a trial before the Court, or a jury if you request it? _Yes_

6. Do you understand that you are entitled to a speedy trial? _Yes_

7. Do you understand that the State must prove your guilt beyond a reasonable doubt before you can be convicted? _Yes_

8. Do you understand that if you have a trial that you have the right to summons witnesses and compel their attendance to testify in your behalf? _Yes_

9. Do you understand that you have the right to confront and cross-examine any witness called to testify against you? _Yes_

10. Do you understand that you have the right to remain silent and refuse to incriminate yourself in any manner? _Yes_

11. Do you understand that if you have a trial by jury, and the jury finds you guilty, then the jury may assess the punishment? _Yes_

■■■■■■■■

12. Do you understand that on a plea of guilty the Court assesses the punishment? _yes_

13. Have you had an opportunity to discuss the facts surrounding the alleged offense with your attorney? _yes_ With members of your family? _yes_ With a friend? _yes_

14. Do you want any additional time to discuss this charge with your attorney, family, or friends before entering your plea of guilty? _NO_

15. Have you given your attorney all the facts concerning the alleged offense? _yes_

16. Are you satisfied with the advice given you by your attorney? _yes_

17. Is there anything that you have asked your attorney to do with respect to your case that he has not done? _NO_

18. Are you completely satisfied in every respect with the manner in which your attorney has represented you? _yes_

19. Are you now in any manner under the effect of any sedation, drug, or alcohol? _NO_

20. Are you entering a plea of guilty because you are guilty as charged? _yes_

21. Do you have any other reason for entering a plea of guilty other than the fact that you are guilty as charged? _NO_

22. Do you understand that the range of punishment for the offense with which you are charged is _5-15_ years in the Missouri Division of Corrections ~~or up to~~ ~~one year in the county jail and/or a fine?~~ _yes_

23. Has there been "plea-bargaining" in this case? _yes_

24. If so, please set forth the "plea-bargaining" as you understand it. _180'_ _5 years probation 5 years sentans_ _____

25. Do you understand that unless the Court knows that there has been "plea-bargaining" in the case, the Court may sentence you to a punishment greater or less than the "plea-bargaining" agreement, or than the punishment a jury would assess? _yes_

26. Do you understand that if there has been "plea-bargaining" in this case, and the Court refuses to follow the "plea-bargain" agreement, that you have a right to withdraw your guilty plea and have a trial by jury? _yes_

27. Do you understand that by pleading guilty, you are admitting that you committed the crime that you are charged with? _yes_

28. State in your own words what you did in committing the crime that you are charged with. _he came to my house with a bat I went to his house with a stik and I wang at him._ _____
_____
_____

29. Were all your answers to the above questions given by you voluntarily and of your own free will? _yes_

30. Do you have any questions concerning your rights or the consequences of your plea of guilty? _No_

31. With the understanding you have of your rights as set out above and with your understanding of the range of punishment that may be imposed, is it still your desire to enter a plea of guilty to this charge? _yes_

32. Do you request the Court to accept your answers to the above questions as true in determining whether or not your plea of guilty was voluntarily entered with a full understanding of the consequences of your plea? _yes_

REMARKS: _____

_____
_____
_____
_____

(If additional space is needed, you may use the back of this sheet.)

_____
Defendant

\*    \*    \*    \*    \*    \*

STATE OF MISSOURI    )
                     )  ss.
COUNTY OF _____ )

Being first duly sworn, I state that I have carefully read the foregoing statement consisting of three pages, or it has been read and explained to me, and that I fully understand the questions and that the answers given are my answers made voluntarily and under oath.

_____
Defendant

Subscribed and sworn to before me this ____ day of _____, 19___.

_____
Deputy-Circuit Clerk    Notary Public

My Commission Expires: _____

\*    \*    \*    \*    \*    \*

I have carefully gone over the above statement with the defendant, have answered any questions he asked and believe defendant fully understands the statement. The answers given are the answers of the defendant after consultation with me.

I approve the statement.

_____